OPINION
{¶ 1} This is an appeal from a summary judgment ruling of the Court of Common Pleas, Ashland County.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} Appellant (Charter) was a corporation organized under the laws of Virginia.
{¶ 3} A minority shareholder (25%) is Donald Martin, an attorney with broad experience in the radio broadcasting field and the ownership of radio stations.
{¶ 4} Radio Station WBZW, Loudenville, Ohio, established by Charter was sold in 1994 to Appellee K-County and Mark Bohach and Arlene Bohach.
{¶ 5} The agreement of sale, in addition to other terms provided:
{¶ 6} "Buyer hereby grants to Seller, and/or to any of its principals as of the date hereof, the right of first refusal to purchase the station or an interest therein from (10) years commencing on the Closing Date. (For the purposes of this paragraph 1(c), "Seller" means the Seller and/or any principal(s) of the Seller as of the date hereof.) If, during such ten-ear period, Buyer receives from a third party purchaser a bonafide offer to acquire the station or a controlling interest therein, and if Buyer wishes to sell the station or a controlling interest therein for the terms of the offer, Buyer shall, prior to any such sale, first comply with the provisions of this paragraph. For the purposes of this paragraph "Station" and "controlling interest in Station" shall be considered synonymous terms. The requirements of this paragraph shall also apply to the acceptance of a prospective third party purchaser in response to an offer by Buyer to sell the Station, as well as to any acceptance by Buyer of an offer from a third party purchaser to buy the Station.
{¶ 7} "i. Buyer shall execute in writing and deliver to Seller notice of its desire to sell the Station. The notice shall contain a signed copy of the prospective purchaser's written offer to purchase or its acceptance of Buyer's offer to sell, including all price and material terms and conditions of the proposed transaction, and the prospective purchaser's name and address. The notice shall be sent by registered mail and shall be deemed to have been given upon receipt.
{¶ 8} "ii. Seller shall have the right, at its option, to acquire an interest in the Station equal to that proposed to be transferred to the prospective third party purchaser, at the price and on the terms and conditions contemplated in the proposed transaction. If Seller wishes to exercise its option to purchase, it shall, within thirty (30) days of the date that notice was given to Seller by Buyer of its desire to sell, comply with the following procedures:
{¶ 9} "a. Seller shall deliver to Buyer an executed letter of intent indicating its intent to purchase the Station at the price and under the terms and conditions contemplated in the proposed transaction with the third-party purchaser. Either party may at that time also reserve the right to execute within an additional fourteen (14) days a more formal contract, the material terms of which shall not vary from those of the letter of intent.
{¶ 10} "b. With its letter of intent, Seller shall provide Buyer with documentation demonstrating that it is financially qualified to purchase the Station at the price and under the terms and conditions contemplated in the proposed transaction with the prospective third-party purchaser, provided however, that such burden of documentation shall be no greater than that imposed upon the prospective third-party purchaser. If the weight of this burden is disputed, Seller shall be entitled to review the documentation provided to Buyer by the prospective third-party purchaser.
{¶ 11} "c. Seller shall place an amount of money equal to the prospective purchaser's earnest money escrow deposit as earnest money in an escrow account with a Federally insured banking institution to be administered by an escrow agent acceptable to both Buyer and Seller."
{¶ 12} The Bohachs, individually, owned a radio station in Fredericktown, Maryland operated by their solely owned corporation, Bohach Communications, Inc.
{¶ 13} Dean Stampfli became interested in acquiring both the Loudonville and Fredericktown stations and made an offer of $1,125,000.00 for both.
{¶ 14} Bohach sent a copy of Stampfli's Loudonville letter of intent to Martin on October 10, 1997.
{¶ 15} Certain communications between Bohach, Charter and Martin followed relative to the Stampfli offer and the right of first refusal of the 1994 sales agreement.
{¶ 16} Stampfli and Bohach executed two asset purchase agreements, the one being the acquisition of the Loudenville station and the real estate there and in Fredericktown for $1,000,000.00 and the Fredericktown station for $125,000.00 on November 15, 1997.
{¶ 17} The corporate charter of Charter Broadcasting Group, Ltd. was cancelled in 1997.
{¶ 18} Suit was filed November 15, 2001, dismissed under Civ.R. 41 and refiled September 16, 2003.
{¶ 19} After suit was filed in this matter, the Court granted summary judgment to Appellees pursuant to two separate Civ.R. 56 Motions.
{¶ 20} Appellant raises the following Assignments of Error:
 ASSIGNMENTS OF ERROR
{¶ 21} "I. The trial court erred by granting summary judgment to appellees on the ground that appellant lacked privity in sale contract as a principal of selling corporation so that appellant had no right to exercise right of first refusal.
{¶ 22} "II. The trial court erred by granting summary judgment to appellee bohach as there exists factual issues for the jury's determination as to whether a bona fide offer was made under right of first refusal.
{¶ 23} "III. The trial court erred by granting summary judgment to appellee bohach on the basis that appellant did not have the financial means to satisfy the right of first refusal.
{¶ 24} "IV. The trial court erred by granting summary judgment on appellant's tortious conduct claims as there existed factual questions for the jury's determination as to whether appellee stampfli tortiously interfered with contractual relationship and whether appellees stampfli and bohach were guilty of civil conspiracy."
{¶ 25} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
{¶ 26} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
{¶ 27} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
{¶ 28} It is based upon this standard we review each assignment, but we will review appellant's Fourth Assignment of Error initially.
 IV.
{¶ 29} The Ohio Supreme Court first formally recognized a cause of action for tortious interference with a contract in Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415. InKenty, the court set forth the elements of such an action as: (1) the existence of a contract; "(2) the wrongdoer's knowledge of the contract; "(3) the wrongdoer's intentional procurement of the contract's breach; "(4) lack of justification; and "(5) resulting damages. Id. at 419. In the event a complaint fails to provide allegations regarding each of these elements, the complaint can properly be dismissed for failure to state a claim upon which relief can be granted. Schiavoni v. Steel City Corp.
(1999), 133 Ohio App.3d 314, 317. See Fred Siegel Co., L.P.A. v.Arter Hadden, 85 Ohio St.3d 171, 707 N.E.2nd 853, 1999-Ohio-260, paragraph one of the syllabus (internal citation omitted).
{¶ 30} A claim of tortious interference with contract arises Awhen one party to a contract is induced to breach the contract by the malicious acts of a third person who is not a party to the contract. Battista v. Lebanon Trotting Ass'n (6th Cir., 1976),538 F.2d 111, 116.
{¶ 31} This Court stated the requirements of a civil conspiracy in Nix v. Nationwide Mutual Insurance Company (March 27, 2000), Ohio App. Fifth District, 1999CA00176:
{¶ 32} "A claim of civil conspiracy is recognized in Ohio with the following required elements:
{¶ 33} "1. A malicious combination;
{¶ 34} "2. Two or more persons;
{¶ 35} "3. Injury to persons or property; and
{¶ 36} "4. Existence of an unlawful act independent from the actual conspiracy. Schrock v. D N Development Inc., (June 28, 1995), Tuscarawas App. No. 94AP080057, unreported, at 2." See also Geo-Bio Services, Inc. v. Solar Testing Laboratories, Inc.
(2001), 145 Ohio App.3d 514.
{¶ 37} As to the ruling from which this Assignment arises, the court held:
{¶ 38} "Defendants Knox Broadcasting Corp., Walter R. Stampfli, Dean R. Stampfli and Ashland Broadcasting Corp argue, among other issues, that Plaintiff Donald E. Martin has not established privity. Therefore, both the contractual arguments and tortuous arguments must fail. Plaintiff Donald E. Martin argues exceptions to these . . .".
{¶ 39} Privity exists when the party and the other individual have mutual interests, including the same desired result. Deatonv. Burney (1995), 107 Ohio App.3d 407, 413, 669 N.E.2d 1.
{¶ 40} As privity of contract is unrelated as an element of either of the torts of tortious interference with a contract or civil conspiracy, we would, at first impression, sustain this Fourth Assignment of Error and remand this aspect of the appeal to the trial court to consider those documents provided, covered by Civil Rule 56, as to whether these tortious claims as to the listed defendants fail without considering privity as a basis.
 I., II., III.
{¶ 41} However, we must now examine the other Assignments of Error and the court's ruling with respect thereto as the contractually related claims of Appellees, Knox, Stampflis' and Ashland are inter-related.
{¶ 42} The court's ruling as to the non-appealing defendants, K-Country and the Bohach's was as follows:
{¶ 43} "Defendants K-Country, Inc., Mark Bohach and Arlene Bohach argue that Plaintiff Donald E. Martin admits he did not satisfy the right of first refusal and that he did not have the financial means to do so, at that time. For this reason, the Court finds that reasonable minds can come to but one conclusion here. The Motion for Summary Judgment by Defendants K-Country, Inc., Mark Bohach and Arlene Bohach is hereby granted for the reasons set forth in their memoranda herein."
{¶ 44} Other than the clear determination by the court that Appellant, Donald C. Martin failed to satisfy those steps required to exercise the 1994 right of first refusal and the lack of financial means to accomplish the exercise thereof, we are not quite sure of the meaning of the language "for the reasons set forth in their memorandum herein".
{¶ 45} Such memoranda, in addition to an analysis of the contractual obligations necessary to exercise such right and the contractual liquidated damage provisions also includes a review of intentional interference with contractual relations, civil conspiracy and applicable statutes of limitations.
{¶ 46} Since it is not clear that the court was adopting Appellees reasoning relating to each legal position by the quoted language in addition to the contract terms, we shall limit our discussion to the contract.
{¶ 47} The first issue to determine is the ownership or continued existence of the right of first refusal and the question of privity.
{¶ 48} The contract granted or reserved such right to Charter Broadcast Group, Ltd and/or to any of its principals.
{¶ 49} As Charter no longer exists since the cancellation of its charter, we must then review the question as to whether Appellant Martin, a minority shareholder, is a "principal". Such term as to the seller was undefined but defined as to the Bohachs as to the buyer.
{¶ 50} He cites G/G M Real Estate Corporation v. Susse ChaletMotor Lodge of Ohio (1991), 61 Ohio St.3d 375 and William CoaleDevelopment Co. v. Kennedy (1930), 121 Ohio St. 582, as supporting the proposition that a shareholder is equivalent to a principal. Such cases do not support such argument or concept. While it is unlikely that Appellant Martin as a minority shareholder in Charter was a "principal", we do not have to make such determination.
{¶ 51} Next, we must look to the contractual obligations related to the exercise of the right of first refusal.
{¶ 52} Notification of the offer was sent to Charter on October 3, 1997, (Exhibit B). Appellant Martin responded on October 10, 1997 with certain questions.
{¶ 53} Notwithstanding the fact that he admits such questions were answered, Tr. 38-39, he now claims that the terms of the offers, which also involved the Fredericktown station and real estate were intended to prevent the exercise of such contractural right by the valuations placed on the respective stations.
{¶ 54} Obviously, the valuation placed on the Fredericktown station by itself is immaterial as the right involved only the Loudenville station.
{¶ 55} Appellant's expert's opinion was to the effect that the Loudenville offer was an excessive price for such Ohio station.
{¶ 56} However, the court had before it the fact that Charter sold it through bankruptcy proceedings for $325,000.00 when it was not an operating station and attempts were made prior thereto, when it was new, to sell it in the range of $500,000.00 to $700,000.00.
{¶ 57} The contract required that exercise of the right be done within 30 days along with a letter of intent and documentation of financial ability. None of this was done.
{¶ 58} Also, while the contract limited financial damages to liquidated damages (undefined as to seller) of it also provided "to any other remedies available to it in law or equity." No court action was taken to prevent the sale although an attempt to block the license transfer by the FCC occurred.
{¶ 59} We conclude that, whether or not Appellant Martin was a "principle" with the intent of the parties, the steps required to exercise the right of first refusal were not taken nor was any court action timely taken to raise the tortuous interference nor conspiracy claims. Such were raised only when the $32,000.00 sale occurred, which also included other stations.
{¶ 60} We, therefore find, as the court did, that the contractual requirements were not followed by Appellant Martin and secondly that, pursuant to Appellant Martin's deposition, no substantiation of the tortuous conduct existed.
{¶ 61} Appellant's First, Second and Third Assignments of Error are overruled.
{¶ 62} This cause is affirmed at Appellant's costs.
Boggins, J. and Gwin, P.J., concur.
Hoffman, J., concurs in part dissents in part.