MORROW et al., Appellants,

v.

REMINGER & REMINGER COMPANY L.P.A. et al., Appellees.

[Cite as *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665.]

Court of Appeals of Ohio, Tenth District, Franklin County.

No. 08AP–925.

Decided June 9, 2009.

See also, 96 Ohio St.3d 183, 772 N.E.2d 1177.

44

46

Hammond, Sewards & Williams and Gary W. Hammond, for appellants.

Janik L.L.P., Steven G. Janik, Andrew J. Dorman, Jason D. Winter, and Kelly H. Rogers; and Maguire & Schneider, L.L.P., Keith Schneider, and Karl H. Schneider, for appellee Reminger & Reminger Co., L.P.A.

Freund, Freeze & Arnold, and W. Frederick Fifner; and Troutman Sanders L.L.P., Sean M. Hanifin, and Steven W. McNutt, for appellee Medical Protective Company.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Thomas E. Boyle, and Mark C. Melko, for appellee Family Medicine Foundation, Inc.

---

FRENCH, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Nicole Morrow, N. Gerald DiCuccio, Gail Zalimeni, and Butler Cincione & DiCuccio (the "Butler firm") (collectively, "appellants"), appeal the judgment of the Franklin County Court of Common Pleas, which dismissed their complaint against defendants-appellees, Reminger & Reminger Co., L.P.A. ("Reminger"), Family Medicine Foundation, Inc. ("FMF"), and The Medical Protective Company ("MedPro") (collectively, "appellees"), pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted. For the following reasons, we affirm.

{¶ 2} Appellants initially filed a complaint against appellees on January 14, 2008, alleging conspiracy, fraud, intentional infliction of emotional distress, tortious interference with contractual relations, malicious prosecution, and abuse of process arising from appellees' alleged conduct in two prior lawsuits: *Bright v. Thomas E. Rardin Family Practice Ctr.* ("the *Bright* suit") and *Family Medicine Found., Inc. v. Bright* ("the *Fam–Med* suit").[1] In lieu of answers, appellees each filed a motion to dismiss appellants' complaint pursuant to Civ.R. 12(B)(6).

{¶ 3} On April 28, 2008, along with their memoranda contra the motions to dismiss, appellants filed a first amended complaint, which alleged the following claims: fraud; civil conspiracy; violation of the Ohio Corrupt Practices Act ("OCPA"), R.C. 2923.31, et seq.; perjury, in violation of R.C. 2921.11; falsifica-

---

1. Appellants incorporated by reference into their amended complaint the records from these cases, including "motions, memos, briefs, pleadings, affidavits and exhibits * * * along with transcripts of depositions, trial, hearings and arguments." No party has objected to the trial court's recitation of the proceedings in those prior cases.

tion, in violation of R.C. 2921.13; intentional infliction of emotional distress; tortious interference with contract business relations; malicious prosecution; and abuse of process. Each appellee again filed a Civ.R. 12(B)(6) motion to dismiss.

{¶ 4} On June 11, 2008, without leave of court, appellants filed an amended demand for judgment in which they requested injunctive relief, pursuant to R.C. 2923.34(B), for appellees' alleged OCPA violation, in addition to the monetary relief requested in the original and amended complaints. Each appellee moved the trial court to strike the amended demand.

{¶ 5} On September 15, 2008, the trial court issued decisions granting appellees' motions to dismiss the original and amended complaints and granting appellees' motions to strike the amended demand. The trial court entered its final judgment of dismissal on September 24, 2008.

{¶ 6} Having filed a timely notice of appeal, appellants assert the following assignments of error:

1. The Trial Court erred in Dismissing RICO claim.

2. The Trial Court erred in Striking Falsification claim.

3. The Trial Court erred in Striking Common Law Fraud claim.

4. The Trial Court erred in Striking Common Law Conspiracy claim.

5. The Trial Court erred in Striking Common Law claim for tort[i]ous interference with business relations.

6. The Trial Court erred in Striking Common Law claim for intentional infliction of emotional distress.

7. The Trial Court erred in applying the witness immunity Doctrine to bar Appellants' statutory and common law claims, which are supported by Appellees' falsification.

8. The Trial Court erred in failing to apply the proper standard of review to a Civ.R. 12(B)(6) Motion to Dismiss, which this court can correct on de novo review.

9. The Trial Court erred in striking Amended Demand.

{¶ 7} A motion to dismiss for failure to state a claim is procedural and tests whether the complaint is sufficient. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985. Rather, the trial court may review only the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223,

327 N.E.2d 753, syllabus. Moreover, the court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. The court need not, however, accept as true unsupported legal conclusions in the complaint. See *Hodge v. Cleveland* (Oct. 22, 1998), 8th Dist. No. 72283, 1998 WL 742171; *Eichenberger v. Petree* (1992), 76 Ohio App.3d 779, 782, 603 N.E.2d 366. We review de novo a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶ 8} Before specifically addressing appellants' assignments of error, a brief recap of the parties' history is helpful. Appellant Nicole Morrow, formerly known as Maria Nicole Bright, filed the *Bright* suit against the Thomas E. Rardin Family Practice Center ("Rardin") and three physicians, alleging claims arising out of her exposure to the HIV virus while obtaining medical care and treatment at Rardin. Appellants DiCuccio, Zalimeni, and the Butler firm were Morrow's legal counsel in the *Bright* suit. In December 1999, Morrow obtained a default judgment against Rardin for $978,840.41 in the *Bright* suit. Thereafter, Morrow attempted to enforce the default judgment against FMF, asserting that Rardin was a fictitious name of FMF, which operated within the building known as the Thomas E. Rardin Family Practice Center. In February 2000, represented by Reminger, FMF filed a motion to intervene in the *Bright* suit, denying that it did business as Rardin and maintaining that the default judgment was rendered against a nonentity. The trial court denied FMF's motion to intervene.

{¶ 9} On February 25, 2000, again represented by Reminger, FMF filed the *Fam–Med* suit to enjoin appellants from executing upon FMF's assets to satisfy the default judgment. On March 15, 2000, Morrow filed a counterclaim, requesting a declaration that Rardin was a fictitious name of FMF, against whom the default judgment was valid. On November 14, 2000, the *Fam–Med* court held that Rardin was a fictitious name of FMF and that the default judgment was valid against FMF. FMF did not appeal the determination that Rardin was a fictitious name of FMF, but argued, on appeal, that the default judgment was void because it was rendered solely against a non-entity. This court reversed, holding that a lawsuit may not be commenced or maintained against a defendant solely under a fictitious name. See *Family Medicine Found., Inc. v. Bright* (June 28, 2001), 10th Dist. No. 00AP–1476, 2001 WL 722103. The Supreme Court of Ohio reversed this court, however, and reinstated the trial court's judgment. See *Family Medicine Found., Inc. v. Bright,* 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177.

{¶ 10} After the Supreme Court's ruling, FMF moved for Civ.R. 60(B) relief from the default judgment in the *Bright* suit, which had been stayed pending resolution of the *Fam–Med* suit. The trial court denied FMF's Civ.R. 60(B) motion, and FMF paid $1,620,000 to satisfy the default judgment and accrued interest.

{¶ 11} The basis for appellants' current claims is that appellees and their agents engaged in fraud, falsification, perjury, and conspiracy to commit fraud and perjury in advocating that FMF did not conduct business under the fictitious name of Rardin and in denying knowledge that FMF operated as Rardin to shield FMF (and its insurer, MedPro) from liability for the default judgment. Appellants' claims are based entirely on appellees' alleged conduct during the course of, and relevant to, the *Bright* and *Fam–Med* suits, including affidavit, deposition, and trial testimony and arguments contained in pleadings, motions, briefs, and other court filings.

■ {¶ 12} We first address appellants' claims for falsification and fraud and the corresponding second and third assignments of error. R.C. 2921.13 defines the offense of falsification and provides:

(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

(1) The statement is made in any official proceeding.
* * *

(6) The statement is sworn or affirmed before a notary public or another person empowered to administer oaths.

(7) The statement is in writing on or in connection with a report or return that is required or authorized by law.
* * *

(F)(1) Whoever violates division (A)(1), * * * (6), (7), * * * of this section is guilty of falsification, a misdemeanor of the first degree.
* * *

(G) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

{¶ 13} Appellants contend that appellees' presentation of false statements to the courts constitutes a violation of R.C. 2921.13 and that they may maintain a

private, civil action against appellees pursuant to R.C. 2921.13(G). In response, Reminger and FMF argue that appellants' civil-falsification claim fails because no party has been criminally charged with, let alone convicted of, violating R.C. 2921.13. MedPro maintains that the civil-falsification claim against MedPro fails because appellants did not allege that MedPro, or any MedPro employee, made any false statement or that any officer, director, or high level MedPro employee authorized, requested, or knew about the alleged falsification.

{¶ 14} The trial court held, in part, that appellants failed to state a falsification claim against appellees because appellees are absolutely immune from civil liability for their actions taken in previous civil litigation. With respect to witness immunity, the Second District Court of Appeals has stated as follows:

> In Ohio, it has long been recognized that freedom of speech is essential in a judicial proceeding to ensure justice. To preserve this freedom and thereby assure that all participants in a judicial proceeding feel free to testify, question, and act, courts have prohibited civil actions based on certain statements made at trial. For instance, judges, counsel, parties, and witnesses are absolutely immune from civil suits for remarks made during the course of and relevant to a judicial proceeding.

*DeBrosse v. Jamison* (Jan. 14, 1992), 2d Dist. No. 91–CA–26, 1992 WL 5851, citing *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 6 OBR 489, 453 N.E.2d 693.

{¶ 15} In *Willitzer*, the Supreme Court considered whether an independent physician who examined workers' compensation claimants at the request of the Industrial Commission was absolutely immune from a civil suit based on his examinations. The claimants alleged that the physician's examinations were inadequate and incomplete and that the physician's reports of those examinations contained intentional misrepresentations that resulted in the denial or reduction of the claimants' workers' compensation benefits. The Supreme Court held that while the physician was not absolutely immune from a civil suit based on his examinations, his reports and testimony at an adjudicatory proceeding were privileged under the doctrine of witness immunity.

{¶ 16} While perjury, subornation of perjury, and conspiracy to commit perjury are punishable under criminal statutes, they may not, for public policy reasons, form the basis of a civil lawsuit. *Costell v. Toledo Hosp.* (1988), 38 Ohio St.3d 221, 223–224, 527 N.E.2d 858. "[T]he giving of false testimony in a judicial proceeding * * * does not give rise to a civil action for damages resulting from the giving of the false testimony" even when it is alleged that the witness knew the testimony to be false. *Schmidt v. State Aerial Farm Statistics, Inc.* (1978), 62 Ohio App.2d 48, 51, 16 O.O.3d 85, 403 N.E.2d 1026; *DeBrosse*. Although a person injured by the criminal act of another may ordinarily obtain civil relief, an exception exists in the "very well established rule that no action lies to recover

damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury * * * committed in the course of, or in connection with, a civil action * * *, regardless of whether the perjurer was a party to, or a witness in, the action or proceedings." *Schmidt* at 50, 16 O.O.3d 85, 403 N.E.2d 1026; see also *Baker v. Orlowsky* (1971), 28 Ohio App.2d 188, 57 O.O.2d 270, 275 N.E.2d 342 (rejecting claim for damages against a doctor who knowingly gave allegedly false testimony); *Stoll v. Kennedy* (1987), 38 Ohio App.3d 102, 526 N.E.2d 821, syllabus ("[t]he giving of perjured testimony in a judicial proceeding does not give rise to a civil action for damages from such testimony either against the litigant alleged to have given the perjured testimony or against the attorney alleged to have suborned the perjured testimony").

{¶ 17} In *Forsyth v. Hall* (Mar. 14, 1997), 2d Dist. No. 16024, 1997 WL 165432, the court affirmed a Civ.R. 12(B)(6) dismissal of claims premised on fraud and misrepresentations, including allegedly false and/or fraudulent statements in affidavits and trial testimony, in the defendant's prosecution of her divorce from the plaintiff. The plaintiff alleged 57 acts in violation of criminal statutes, including falsification, conspiracy, and complicity. Noting the above-cited authority, the court concluded that the defendant was immune and affirmed the dismissal. As noted by another Ohio appellate district, witness immunity " 'negates any claim for injuries causally linked to false testimony.' " *Masek v. Marroulis*, 11th Dist. No. 2007–T–0034, 2007-Ohio-6159, 2007 WL 4098788, ¶ 43, quoting *Brawley v. Plough* (1995), 75 Ohio Misc.2d 36, 39, 662 N.E.2d 905.

{¶ 18} Relying on *Probasco v. Raine* (1893), 50 Ohio St. 378, 34 N.E. 536, appellants argue that witness immunity is inapplicable when a civil remedy is created by statute, as in R.C. 2921.13. In *Probasco*, the plaintiff claimed, based on public policy, that the county auditor was disqualified from acting under two statutes that gave him authority to place omitted property upon the tax duplicate. The Supreme Court stated: "When the legislature, within the powers conferred by the constitution, has declared the public policy, and fixed the rights of the people by statute, the courts cannot declare a different policy, or fix different rights." Id. at 391, 34 N.E. 536. Appellants maintain that because the General Assembly has enacted a civil remedy for falsification, the doctrine of witness immunity cannot foreclose civil liability for such conduct.

{¶ 19} The *Probasco* holding states only that a court may not invalidate a constitutional, validly enacted statute simply because the court believes that the statute is against public policy. Here, the fact that appellees may be entitled to an affirmative defense of immunity does not nullify the statutory cause of action

for civil liability based on falsification.[2]   Indeed, any number of situations could give rise to a claim for falsification outside of a prior civil action, where witness immunity would not be implicated.   *Probasco* does not support appellants' attempts to eviscerate the application of witness immunity to appellants' claims. Appellants cite no other cases, and this court has uncovered no Ohio cases permitting the imposition of civil liability based on false statements or testimony made by attorneys, parties, or witnesses in a civil lawsuit.   We agree that appellants failed to state a falsification claim upon which relief can be granted, and we overrule appellants' second assignment of error.

{¶ 20} The elements of fraud are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.   *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, and *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407.   Failure to plead the elements of fraud with particularity results in a defective claim that cannot withstand a Civ.R. 12(B)(6) motion to dismiss. Civ.R. 9(B); *Paparodis v. Snively*, 7th Dist. No. 6–CO–5, 2007-Ohio-6910, 2007 WL 4465386, ¶ 69, citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 292, 629 N.E.2d 28.

{¶ 21} Appellants' amended complaint alleges material, false representations or concealments, each to the effect that FMF did not conduct business under the fictitious name of Rardin.   Appellants, however, only vaguely allege reliance, stating that "[*appellees'*] *agents, employees, attorneys and officers made material misrepresentations in and after February 2000 with the intent that* [*appellants*] *rely* and [*appellants*] *did rely (reasonably, implied, presumed), all to* [*appellants'*] *damage.*"   The trial court found that appellants failed to plead with particularity the element of justifiable reliance and that as a matter of law, appellants cannot establish that they justifiably relied on any representation that FMF did not operate under the fictitious name Rardin.

---

2.   Although a party may not generally raise an affirmative defense in a Civ.R. 12(B)(6) motion, there is an exception when the existence of the affirmative defense is obvious from the face of the complaint.   *Reasoner v. Columbus*, 10th Dist. No. 02AP–831, 2003-Ohio-670, 2003 WL 321551, ¶ 12, citing *Mankins v. Paxton* (2001), 142 Ohio App.3d 1, 9, 753 N.E.2d 918.

{¶ 22} It is clear from the amended complaint that appellants cannot prove any set of facts to establish that they relied on appellees' alleged misrepresentations or omissions regarding whether FMF did business under the fictitious name of Rardin. Appellants vigorously contested and litigated that issue at every turn in both prior actions. Since prior to FMF's motion to intervene in the *Bright* suit, appellants have argued that Rardin was a fictitious name under which FMF did business. Appellants asserted Morrow's right to collect from FMF in the trial court and on appeals to this court and the Supreme Court of Ohio. Appellants again defended Morrow's right to collect the default judgment from FMF in opposition to FMF's motion for relief from judgment. Whether Rardin was a fictitious name of FMF and whether FMF was liable for the default judgment were the central, disputed issues throughout the *Bright* and *Fam–Med* suits, and appellants ultimately prevailed on those issues.

{¶ 23} Appellants' ongoing and aggressive opposition of appellees' representations regarding the relationship between FMF and Rardin defeats any claim of justifiable reliance by appellants. See *Thompson v. Cent. Ohio Cellular, Inc.* (1994), 93 Ohio App.3d 530, 639 N.E.2d 462. In *Thompson*, a former shareholder of a Subchapter S corporation brought a fraud claim against the corporation and its directors, alleging that the defendants knowingly made false statements in preparing or causing the preparation of the corporation's 1991 federal income tax return with the intent and in expectation that Thompson and the Internal Revenue Service ("IRS") would rely on those statements. The complaint alleged that Thompson called the improper tax treatment to the defendants' attention and requested that the defendants correct the corporation's tax return and related schedules. The Eighth District affirmed the dismissal of Thompson's fraud claim because it was clear from the complaint that Thompson did not rely upon the allegedly fraudulent representations where he recognized their falsity and attempted to convince the defendants to remedy the errors. See also *Dayton–Walther Corp. v. Kelly* (1987), 42 Ohio App.3d 184, 537 N.E.2d 682 (fraud claim properly dismissed pursuant to Civ.R. 12(B)(6) where complaint demonstrated that plaintiff-employer did not rely upon allegedly false representations in medical reports when it defended against the conclusions therein).

{¶ 24} Here, appellants claim that reliance may be established by inference or presumption from circumstantial evidence and cite *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 436, 696 N.E.2d 1001, for the proposition that "[i]t is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance." *Cope* involved the decision whether to certify a class action when the plaintiffs, on behalf of themselves and others similarly situated, sued two insurance companies to

challenge allegedly improper methods used in the procurement of life insurance. Rejecting the defendants' arguments against class certification, the Supreme Court held that proof of reliance would not require separate examination of each prospective class member so as to render class certification improper. Rather, the court stated that cases "involving common omissions across the entire class are generally certified as class actions, *notwithstanding the need for each class member to prove [the] elements [of inducement and reliance]*." (Emphasis added.) Id. at 436, 696 N.E.2d 1001.

{¶ 25} *Cope* does not suggest that appellants here need not prove justifiable reliance to recover on their fraud claim and does not excuse appellants' failure to plead justifiable reliance with particularity, as required by Civ.R. 9(B). Moreover, even were appellants permitted to establish justifiable reliance based on inference, the amended complaint contains no allegations of fact that, accepted as true, would give rise to an inference of justifiable reliance. To the contrary, as stated above, the allegations of the amended complaint preclude an inference of justifiable reliance. For these reasons, we discern no error in the trial court's dismissal of appellant's fraud claim, and we overrule appellants' third assignment of error.

{¶ 26} We now turn to appellants' first assignment of error, concerning their claim under the OCPA, which is modeled on the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 1961, Title 18, U.S.Code. As part of the OCPA, R.C. 2923.32(A) makes it unlawful for any person employed by or associated with any enterprise to "conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.34 grants a civil remedy to a person injured or threatened with injury by a violation of R.C. 2923.32.

{¶ 27} To state a civil claim under the OCPA, "a plaintiff must establish: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Patton v. Wilson*, 8th Dist. No. 82079, 2003-Ohio-3379, 2003 WL 21473566, ¶ 12, citing *Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246, and *Universal Coach*, 90 Ohio App.3d at 291, 629 N.E.2d 28. The failure to plead any of those elements with particularity results in a defective complaint that cannot withstand a Civ.R. 12(B)(6) motion to dismiss. *Universal Coach* at 291, 629 N.E.2d 28.

{¶ 28} Appellants' amended complaint plainly alleges that appellees committed two or more instances of corrupt activity, as defined by R.C. 2923.31(I), to include engaging in, attempting to engage in or conspiracy to engage in perjury, in

violation of R.C. 2921.11. The trial court found, however, that appellants failed to specifically plead either a pattern of corrupt activity or the existence of an enterprise and, accordingly, that appellants failed to state an OCPA claim upon which relief could be granted.

{¶ 29} To survive a motion to dismiss, the amended complaint must contain allegations that the appellees' criminal conduct constitutes a pattern of corrupt activity. R.C. 2923.31(E) defines a "[p]attern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." The commission of two incidents of corrupt activity alone is insufficient to demonstrate a pattern of corrupt activity. *State v. Hughes* (Mar. 13, 1992), 2d Dist. No. 90–CA–54, 1992 WL 52473; see also *Krieger Ford, Inc. v. Chase Motors, Inc.* (Aug. 3, 1999), 10th Dist. No. 98AP–982, 1999 WL 561693.

{¶ 30} The United States Supreme Court, addressing RICO, has stated that "legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff * * * must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." (Emphasis sic.) *H.J. Inc. v. Northwestern Bell Tel. Co.* (1989), 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195. (Emphasis sic.) These factors of continuity and relationship combine to produce a pattern. Id., citing *Sedima, S.P.R.L. v. Imrex Co., Inc.* (1985), 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346. Similarly, in Ohio, a pattern of corrupt activity under the OCPA requires that predicate crimes be related and pose a threat of continued criminal activity. *Hughes*, 2d Dist. No. 90–CA–54; *State v. Haley* (Mar. 30, 1994), 2d Dist. No. 90–CA–79, 1994 WL 107124. But see *State v. Hicks*, 12th Dist. No. CA2002–08–198, 2003-Ohio-7210, 2003 WL 23095414 (rejecting the continuity requirement for establishing an OCPA pattern).

{¶ 31} Appellants argue that appellees' repeated false statements made in the course of the *Bright* and *Fam–Med* suits regarding FMF's use of Rardin as a fictitious name create a pattern of corrupt activity. The amended complaint makes clear that the alleged false statements all involve the same substantive testimony, namely that FMF did not conduct business as Rardin, and that the statements were made (and repeated) for the sole purpose of avoiding FMF's liability for the default judgment. The trial court concluded that, because they were closely related and aimed toward the single, discrete goal of avoiding liability for the default judgment, the alleged instances of perjury do not establish a pattern of corrupt activity.

{¶ 32} In *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. No. 85467, 2005-Ohio-5985, 2005 WL 3007145, the Eighth District Court of Appeals affirmed a Civ.R. 12(B)(6) dismissal of an OCPA claim based, in part, on the plaintiffs' failure to allege a pattern of corrupt activity. There, the plaintiffs, who, as minors, were allegedly sexually abused by priests and other church officials, brought a civil action against the Catholic Diocese of Cleveland, two bishops, and their associates, under the OCPA. The plaintiffs alleged that the defendants, acting as an organized corrupt entity, concealed the wrongdoings of the alleged abusers. Regarding the requirement that the plaintiffs specifically plead a pattern of corrupt activity, the court noted that the plaintiffs alleged numerous acts by the defendants, including intimidation of one plaintiff, failure to report other named victims' cases, and money laundering. Nevertheless, the court concluded that those acts, "although many in number, emanate from a single event, the alleged attempt to conceal the child sex abuse and/or the predatory priest." Id. at ¶ 36. The court held that "[a]ll of the other alleged acts make up their claim for concealment. A single event cannot establish a pattern regardless of the number of criminal acts emanating therefrom." Id.

{¶ 33} Appellants rely on two federal cases for the proposition that a single scheme involving several underlying, unlawful acts, is sufficient to demonstrate a pattern under RICO. See *United Fish Co. v. Barnes* (D.Me.1986), 627 F.Supp. 732, and *Trak Microcomputer Corp. v. Wearne Bros.* (N.D.Ill.1985), 628 F.Supp. 1089. While a few federal courts have allowed civil RICO complaints supported by allegations of two or more instances of mail or wire fraud in furtherance of a single fraudulent scheme, they are in the minority. See *B.J. Skin & Nail Care, Inc. v. Internatl. Cosmetic Exchange, Inc.* (D.Conn.1986), 641 F.Supp. 563, 565–566; *MHC, Inc. v. Internatl. Union, United Mine Workers of Am.* (E.D.Ky. 1988), 685 F.Supp. 1370, 1383–1385. Most federal courts "have adopted [a] common-sense approach," with some courts requiring a plaintiff to plead that the defendants have engaged in more than one related criminal episode or scheme and other courts requiring that a complaint allege an open-ended scheme over an extended period to demonstrate that the alleged criminal activity is continuous rather than isolated. *B.J. Skin & Nail Care* at 566. We find the minority view endorsed by appellants contrary to Ohio case law, including *Herakovic*, and we decline to adopt it.

{¶ 34} In *Columbia Natural Resources, Inc. v. Tatum* (C.A.6, 1995), 58 F.3d 1101, 1110, the Sixth Circuit applied a multifactor test to determine whether a complaint alleged a pattern under RICO. The court stated:

[T]o state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each

scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better).

Applying this test, we conclude that the amended complaint does not allege a pattern of corrupt activity. The allegations demonstrate, at best, a single scheme of narrow scope to avoid liability for the default judgment and a single type of predicate act, i.e., perjury. Although appellants allege that appellees repeated the perjured statement at discrete times over seven years, the substance of the alleged perjury remained the same and caused, at most, a single type of injury, stemming from Morrow's uncertainty whether she would be able to collect on the default judgment. Finally, the amended complaint demonstrates that the alleged corrupt activity involved one set of perpetrators and a single victim, Morrow. " 'Where there is only one purpose, one result, one set of participants, one victim, and one method of commission, there is no continuity and therefore no pattern.' " *B.J. Skin & Nail Care,* 641 F.Supp. at 566, quoting *Torwest DBC, Inc. v. Dick* (D.Colo.1986), 628 F.Supp. 163, 166.

{¶ 35} Whether under the multifactor analysis employed in *Columbia Natural Resources* or the analysis utilized in *Herakovic,* we discern no error in the trial court's conclusion that appellants failed to allege, with particularity, a pattern of corrupt activity. Appellees' repetition of allegedly false statements regarding FMF's use of Rardin as a fictitious name, in a singular effort to avoid liability for the default judgment, is insufficient to establish a pattern of corrupt activity. See *Dunham v. Independence Bank of Chicago* (N.D.Ill.1986), 629 F.Supp. 983 (holding that a single, fraudulent scheme that consisted of a single, but repeated, misrepresentation did not constitute a pattern of racketeering activity).

{¶ 36} We similarly discern no error in the trial court's conclusion that appellants failed to allege the existence of an enterprise. To prevail on a claim under R.C. 2923.32(A)(1), a plaintiff must establish that the defendant was employed by or associated with an enterprise and that the plaintiff directed or participated in the enterprise's affairs through a pattern of corrupt activity. Under the OCPA, an " '[e]nterprise' includes any individual, * * * corporation, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C). Because "persons," not "enterprises," are liable under the OCPA, the person and the enterprise must be separate entities. *United States Demolition & Contracting, Inc. v. O'Rourke Constr. Co.* (1994), 94 Ohio App.3d 75, 85, 640 N.E.2d 235, citing *Universal Coach,* 90 Ohio App.3d at 291, 629 N.E.2d 28. An enterprise must also be an entity separate from the pattern of activity in which it engages. *United States Demolition & Contracting*

at 85, 640 N.E.2d 235, citing *Old Time Ent., Inc. v. Internatl. Coffee Corp.* (C.A.5, 1989), 862 F.2d 1213, 1217.

{¶ 37} Appellants contend that appellees constituted an association in fact that functioned as a continuing unit, separate and apart from the alleged perjury. Appellants also maintain that the enterprise existed separate and apart from each appellee in that Reminger represented other clients, MedPro managed claims for other insureds, and FMF operated other medical clinics.

{¶ 38} The United States Supreme Court has described an association-in-fact enterprise as an ongoing organization, formal or informal, whose members function as a continuing unit that is separate from the pattern of activity in which it engages. *United States v. Turkette* (1981), 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246. The Eighth District discussed the requirements for pleading an association in fact enterprise in *Herakovic,* 2005-Ohio-5985, ¶ 23–24:

> Courts have held that one of the following must be specifically pled to establish an "association in fact" enterprise: (1) an ongoing organization with a commonality of purpose or a guiding mechanism to direct the organization; (2) a continuing unit with an ascertainable structure; or (3) an organizational structure distinct from the pattern of predicate acts.
>
> Accordingly, we conclude in order for the appellants in this case to have sufficiently pled an enterprise, they must plead structure, continuity, and separate existence from the corrupt pattern.

(Footnote omitted.) "These elements imply a degree of hierarchical organization or structure that distinguishes a RICO enterprise from a simple conspiracy." *Hager v. ABX Air, Inc.* (Mar. 25, 2008), S.D.Ohio. No. 2:07–cv–317, 2008 WL 819293 (memorandum opinion and order).

{¶ 39} *Herakovic,* 2005-Ohio-5985, 2005 WL 3007145, at ¶ 27, held that a plaintiff "must allege in [the] complaint that the association in fact had a shared purpose, continuity, unity, an identifiable structure, and some goals separate from the predicate acts themselves." Neither the word "enterprise" nor the phrase "association in fact" appears in the amended complaint, and the amended complaint contains no facts from which it can be inferred that appellees, as an association in fact, functioned as a continuing unit with an identifiable structure and goals separate from the alleged predicate acts. Appellants' contention that each of the appellees functioned as an individual legal entity with respect to other business matters is insufficient to allege an association-in-fact enterprise that functioned as a continuing unit. While each appellee continued to act in its individual capacity, there is no allegation suggesting that the purported association in fact between appellees acted separate and apart from the alleged predicate acts. See *Patton,* 2003-Ohio-3379, 2003 WL 21473566, at ¶ 20–21. At

most, appellants' allegations demonstrate that appellees functioned in their contractual roles as attorney and client or as insurer and insured. Thus, like the trial court, we conclude that appellants' amended complaint failed to allege with specificity the existence of an enterprise through which appellees acted. For these reasons, we overrule appellants' first assignment of error and affirm the trial court's dismissal of appellants' OCPA claim.

{¶ 40} Appellants' fourth assignment of error concerns the dismissal of their common law conspiracy claim. A civil conspiracy consists of " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863, quoting *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640. A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Orbit Electronics, Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App.3d 301, 2006-Ohio-2317, 855 N.E.2d 91, ¶ 36; *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 220, 687 N.E.2d 481. Appellants' civil conspiracy claim is based on falsification and fraud by appellees. Having concluded that the amended complaint fails to state causes of action for falsification and fraud, we likewise conclude that it fails to state a cause of action for the derivate claim of conspiracy. Accordingly, we overrule appellants' fourth assignment of error.

{¶ 41} In their fifth assignment of error, appellants argue that the trial court erred in dismissing their claim for tortious interference with business relations. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B–Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283. A claim for tortious interference is subject to the four-year statute of limitations set forth in R.C. 2305.09(D). See *Samman v. Nukta*, 8th Dist. No. 85739, 2005-Ohio-5444, 2005 WL 2593500, ¶ 23.

{¶ 42} Appellants alleged that appellees named DiCuccio, Zalimeni, and the Butler firm as defendants in the *Fam–Med* suit with the intention of forcing them to withdraw from representing Morrow in the *Bright* suit and that they did withdraw and terminate their business relationship with Morrow, causing damages to all appellants. As relevant to our discussion here, the trial court concluded that the four-year statute of limitations barred appellants' tortious interference claim.

{¶ 43} We agree with the trial court that appellants' tortious interference claim is time-barred. " '[A] claim of tortious interference with contract arises "when one party to a contract is induced to breach the contract by the malicious acts of a third person who is not a party to the contract." ' " *Escape Ent., Ltd. v. Gosh Ent., Inc.*, 10th Dist. No. 04AP–834, 2005-Ohio-2637, 2005 WL 1252504, ¶ 23, quoting *Charter Broadcast Group, Ltd. v. K–Country, Inc.*, 5th Dist. No. 04–COA–033, 2005-Ohio-168, 2005 WL 100964, ¶ 30. FMF filed the *Fam–Med* suit on February 25, 2000, and that action terminated on August 21, 2002, when the Supreme Court of Ohio reversed the judgment of this court and reinstated the trial court's judgment. Thus, any claim based on appellees' naming Morrow's counsel as defendants in the *Fam–Med* suit occurred prior to August 21, 2002, more than four years before appellants initiated this action on January 14, 2008.

{¶ 44} While appellants maintain that the tortious interference continued until October 2006, when the default judgment was actually paid, and that their cause of action accrued no earlier than October 2006, we disagree. To the extent that any inducement occurred, appellants were induced to terminate their business relationship with each other, and the four-year statute of limitations began to run, prior to August 21, 2002. Thus, appellants' tortious interference claim is time-barred, and the trial court did not err in dismissing that claim. Therefore, we overrule appellants' fifth assignment of error.

{¶ 45} Appellants' sixth assignment of error concerns their claim for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 366, 588 N.E.2d 280.

{¶ 46} Appellants alleged that appellees' conduct in attempting to avoid liability for the default judgment constituted extreme and outrageous conduct, was intended to cause Morrow serious emotional distress, and did proximately cause serious emotional distress. Specifically, appellants alleged that for nearly seven years, Morrow was forced to live and raise her son without the compensation awarded in the Bright suit and in fear that she would not recover on that judgment. The trial court concluded that the alleged conduct did not rise to the level of "extreme and outrageous" and that the alleged emotional distress fell

short of the "serious emotional distress" required to sustain a claim for intentional infliction of emotional distress.

{¶ 47} We disagree with the trial court's conclusion that appellants failed to allege serious emotional distress. To survive a Civ.R. 12(B)(6) motion to dismiss, the complaint must allege that the emotional distress was serious. *Harmon v. Republic–Franklin Ins. Co.* (Oct. 19, 1987), 12th Dist. No. CA87–03–046, 1987 WL 14130. Appellants specifically alleged that Morrow suffered serious emotional distress as a proximate result of appellees' conduct. While the amended complaint does not set forth specific types of emotional distress, a party is not required to prove her case at the pleading stage. Based on the amended complaint, we cannot conclude that Morrow could prove no set of facts establishing that she suffered serious emotional distress as a result of appellees' conduct. See *Mason v. United States Fid. & Guar. Co.* (1987), 37 Ohio App.3d 22, 25, 523 N.E.2d 344 ("[w]hile the claim [alleging that the defendant inflicted pain and suffering with knowledge that its actions would aggravate the plaintiff's emotional distress] was no model of pleading," dismissal was improper because the plaintiff could have established serious emotional distress); *King v. Bogner* (1993), 88 Ohio App.3d 564, 569, 624 N.E.2d 364 (reversing dismissal where complaint, "while somewhat lacking in factual detail, allege[d] all of the elements of intentional infliction of emotional distress").

{¶ 48} Nevertheless, we conclude that the trial court properly dismissed appellants' intentional-infliction-of-emotional-distress claim for failure to allege extreme and outrageous conduct by appellees. In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666, the Supreme Court of Ohio adopted the standard set forth in Restatement of the Law 2d, Torts (1965), Section 46, Comment d, regarding "extreme and outrageous" conduct. The Supreme Court quoted the Restatement as follows:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

Whether conduct is "extreme and outrageous" is initially a question of law for the court. *Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP–1174, 2007-Ohio-

2790, 2007 WL 1640968, ¶ 24, citing *Crawford v. ITT Consumer Financial Corp.* (S.D.Ohio 1986), 653 F.Supp. 1184, 1192. A trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Civ.R. 12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of "extreme and outrageous" conduct. See *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 10 OBR 485, 462 N.E.2d 392; *Wilson v. Chatman*, 3d Dist. No. 3–02–38, 2003-Ohio-2818, 2003 WL 21262748; *Krupar v. Centria Partnership* (Aug. 31, 1999), 5th Dist. No. 98–CA–18, 1999 WL 770232.

{¶ 49} Appellants alleged that appellees' conduct in denying liability for the default judgment and maintaining that FMF did not conduct business under the fictitious name Rardin constituted extreme and outrageous conduct. Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform. *Sears Roebuck & Co. v. Swaykus*, 7th Dist. No. 02 JE 8, 2002-Ohio-7183, 2002 WL 31859516, citing *S. Ohio Med. Ctr. v. Harris* (Sept. 3, 1999), 4th Dist. No. 98 CA 2604, 1999 WL 729256. In *Sears*, the court held that the knowing filing of a false complaint, without more, was insufficient to demonstrate the extreme and outrageous conduct required to support an intentional infliction of emotional distress claim. The same rationale applies to a party's defense of legal claims leveled against it. Thus, even assuming, as we must for purposes of appellees' motions to dismiss, that appellees had no good-faith basis for denying and attempting to avoid liability for the default judgment, appellees' conduct does not rise to the level of extreme and outrageous conduct. A defendant's conduct is not extreme and outrageous simply because it is criminal and/or characterized by malice. See *Yeager*, 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. Here, appellees' attempt to avoid liability cannot be said "to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 375, 6 OBR 421, 453 N.E.2d 666. Accordingly, appellants failed to state a claim for intentional infliction of emotional distress upon which relief can be granted, and we overrule appellants' sixth assignment of error.

{¶ 50} In the seventh assignment of error, appellants assert that the trial court erred in applying witness immunity to bar appellants' other claims based on appellees' alleged falsification. For the reasons stated in our analysis of appellants' second assignment of error, we discern no error in the trial court's application of the witness-immunity doctrine. For that reason, and because we have concluded that appellants' amended complaint otherwise fails to state any claim upon which relief could be granted, we overrule appellants' seventh assignment of error.

{¶ 51} Appellants' eighth assignment of error states that the trial court erred by applying an improper standard of review when ruling on appellees' motions to

dismiss. Appellants do not argue that the trial court misstated the standard of review in its decision, but simply argue that the trial court failed to apply that standard. Beyond vague allegations, appellants do not state how the trial court deviated from the appropriately stated standard, and our review of the trial court's decision reveals no departure from the proper standard. Therefore, we overrule appellants' eighth assignment of error.

{¶ 52} In their ninth and final assignment of error, appellants argue that the trial court erred in striking their amended demand, in which they requested relief, pursuant to R.C. 2923.34(B), in addition to the monetary damages asserted in the original and amended complaints. R.C. 2923.34(B) sets forth various orders that a court may enter when a plaintiff, in a civil OCPA action, proves a violation of the OCPA. The trial court struck appellants' amended demand as untimely under Civ.R. 15(A) and as unnecessary in light of its conclusion that appellants' amended complaint failed to state any claim upon which relief could be granted. Because the decision to permit an amendment to a pleading is within the trial court's discretion, we review the trial court's ruling under an abuse-of-discretion standard. See *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261; *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622.

{¶ 53} Upon review, we discern no abuse of discretion in the trial court's decision to strike appellants' amended demand. Civ.R. 15(A) permits a plaintiff to amend a complaint once before a responsive pleading has been filed, but requires that further amendments be made either with consent of the adverse party or with leave of court. Thus, when appellants filed their amended complaint on April 28, 2008, they were entitled do so without appellees' consent or leave of court. Appellants' amended demand constituted a second amendment to their complaint and, accordingly, required either appellees' consent or leave of court, neither of which appellants obtained. Contrary to appellants' assertion, Civ.R. 54(C), although it permits a court to grant relief not demanded in the complaint, did not require the trial court to permit appellants to amend their complaint a second time absent compliance with the requirements of Civ.R. 15(A). Moreover, because the amended complaint failed to state an OCPA claim upon which relief could be granted, appellants' ninth assignment of error, regarding their amended demand, is moot. For these reasons, we overrule appellants' ninth assignment of error.

{¶ 54} Having overruled each of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT and SADLER, JJ., concur.