[Cite as *Strategy Group for Media, Inc. v. Lowden*, 2013-Ohio-1330.]

COURT OF APPEALS
DELAWARE, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE STRATEGY GROUP FOR MEDIA, INC. | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 12 CAE 03 0016 |
| SUE LOWDEN AND SUE LOWDEN FOR U.S. SENATE | : | |
| | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of Common Pleas, Case No. 10 CV C 08 1155

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 21, 2013

APPEARANCES:

For Appellant:

JEFFREY A. LIPPS
MICHAEL N. BEEKHUIZEN
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215

For Appellees:

GERALD P. FERGUSON
GINA R. RUSSO
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

*Delaney, J.*

{¶1} Plaintiff-Appellant The Strategy Group for Media, Inc. appeals the February 28, 2012 final judgment entry of the Delaware County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2} In October 2009, Defendant-Appellee Sue Lowden announced her candidacy in the Republican primary for U.S. Senate in Nevada. The primary was on June 8, 2010. Lowden and her constituents formed a campaign committee named Sue Lowden for U.S. Senate. Lowden hired Robert Uithoven of j3 Strategies, LLC, as the campaign manager. The campaign committee also engaged a campaign treasurer.

{¶3} Political contributions and Lowden's personal finances funded the Sue Lowden for U.S. Senate campaign. Lowden was, in part, a self-funded candidate. Paul Lowden, Lowden's husband, also contributed to his wife's campaign, although there was no evidence he was a member of her campaign committee. Sue Lowden ultimately self-funded approximately $2 million towards her campaign.

{¶4} As campaign manager, Uithoven was responsible for hiring and managing a media services consultant for the campaign. Rex Elsass, founder and CEO of Plaintiff-Appellant The Strategy Group for Media, Inc. approached the campaign about providing media services. Strategy Group is a GOP media firm located in Delaware, Ohio. It produces and distributes media material for radio and television to be used by a candidate during a political campaign.

{¶5}  Elsass initially met with Uithoven to discuss terms of an agreement for Strategy Group to provide media services for Lowden's campaign.  Elsass and other Strategy Group employees met with Lowden and her husband to discuss their services.  Lowden liked the services offered by Strategy Group and that they were from the Midwest.  In December 2009, Strategy Group sent Uithoven a written agreement for its services.  The agreement stated it was between Strategy Group and Sue Lowden for U.S. Senate.  The agreement was never signed by Strategy Group or Sue Lowden for U.S. Senate.  A second agreement was provided by Strategy Group to Uithoven in January 2010.  It was not signed.

{¶6}  While there was no written agreement governing the relationship between the parties, Strategy Group began producing media material for the Sue Lowden for U.S. Senate campaign with Sue Lowden's participation.  Strategy Group sent invoices for its work directly to the campaign committee.  The invoices were reviewed by Uithoven.  Strategy Group sent 19 invoices, the first invoice dated February 11, 2010 and the last invoice dated June 3, 2010.

{¶7}  Nearing the end of the primary campaign, Strategy Group alleges Lowden told Uithoven that she was going to stop self-funding her campaign.  Strategy Group argues this statement was inconsistent with the messages she and the campaign committee gave to Strategy Group that Lowden would spend whatever it took to finish the race.  Strategy Group argues the information that Lowden would not donate more personal funds to the campaign was relevant to Strategy Group because in May and June 2010, Strategy Group had the opportunity to cancel upcoming

advertising and to instead use those funds to pay off the campaign's outstanding invoices.

{¶8} Lowden did not prevail in the primary. At the close of the primary, Strategy Group submitted invoices to the campaign committee in the amount of $204,435.28. The campaign committee did not pay the invoices.

{¶9} On August 3, 2010, Strategy Group filed its complaint against Sue Lowden and Sue Lowden for U.S. Senate in the Delaware County Court of Common Pleas. Strategy Group filed a First Amended Complaint on August 30, 2010. In its complaint, Strategy Group claimed breach of contract, unjust enrichment, fraud/misrepresentation, and civil conspiracy against both Sue Lowden and Sue Lowden for U.S. Senate. Strategy Group also requested attorney's fees. Sue Lowden and Sue Lowden for U.S. Senate answered the first amended complaint, arguing they disputed the outstanding invoices.

{¶10} Lowden and Sue Lowden for U.S. Senate filed a partial motion for summary judgment on December 6, 2011. In the motion, Lowden and Sue Lowden for U.S. Senate argued there was no genuine issue of material fact to establish Strategy Group's claims for fraud and civil conspiracy against either party. On February 9, 2012, the trial court granted the partial motion for summary judgment and dismissed the fraud and civil conspiracy claims.

{¶11} A jury trial commenced on February 14, 2012 and concluded on February 17, 2012. At the close of Strategy Group's case in chief, the trial court granted directed verdicts (1) in favor of Sue Lowden on Strategy Group's claims for breach of contract and unjust enrichment, dismissing Sue Lowden from the case; (2)

in favor of Sue Lowden for U.S. Senate on Strategy Group's unjust enrichment claim; and (3) in favor of Sue Lowden and Sue Lowden for U.S. Senate on Strategy Group's request for attorney's fees. The only claim presented to the jury was Strategy Group's breach of contract claim against Sue Lowden for U.S. Senate.

{¶12} On February 17, 2012, the jury returned a verdict in favor of the Strategy Group for $193,554.71.

{¶13} The trial court entered its Final Judgment Entry on February 28, 2012. It is from this decision Strategy Group now appeals.

## ASSIGNMENTS OF ERROR

{¶14} Strategy Group raises four Assignments of Error:

{¶15} "I. THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS SUE LOWDEN AND SUE LOWDEN FOR U.S. SENATE ON PLAINTIFF THE STRATEGY GROUP FOR MEDICA, INC.'S CLAIMS FOR FRAUD AND CIVIL CONSPIRACY.

{¶16} "II. THE TRIAL COURT ERRONEOUSLY DIRECTED A VERDICT IN FAVOR OF SUE LOWDEN ON PLAINTIFF THE STRATEGY GROUP FOR MEDIA, INC.'S CLAIMS FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT.

{¶17} "III. THE TRIAL COURT ERRONEOUSLY DIRECTED A VERDICT IN FAVOR OF SUE LOWDEN AND SUE LOWDEN FOR U.S. SENTATE ON PLAINTIFF THE STRATEGY GROUP FOR MEDIA, INC.'S CLAIM FOR ATTORNEY FEES.

{¶18} "IV. THE TRIAL COURT ERRONEOUSLY EXCLUDED EVIDENCE REGARDING STATEMENTS MADE BY DEFENDANTS' CAMPAIGN MANAGER ROBERT UITHOVEN AND STATEMENTS MADE IN DEFENDANT SUE LOWDEN

FOR U.S. SENATE'S PUBLIC FILINGS WITH THE FEDERAL ELECTION

COMMISSION."

**ANALYSIS**

*I.*

Summary Judgment Standard of Review

{¶19} The trial court's decision to grant partial judgment in favor of Sue Lowden and Sue Lowden for U.S. Senate was rendered through Civ.R. 56. We review a summary judgment de novo and without deference to the trial court's determination. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard of review as the trial court and conducts an independent review, without deference to the trial court's determination. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Westbrook v. Swiatek*, 5th Dist. No. 09CAE09–0083, 2011–Ohio–781, ¶ 43.

{¶20} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

{¶21} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth

"specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

<u>Fraud/Misrepresentation and Breach of Contract</u>

{¶22} In count one of the first amended complaint, Strategy Group claimed Sue Lowden and Sue Lowden for U.S. Senate entered into a contract for the provision of media services for the political campaign. Strategy Group alleged Lowden and the campaign committee breached their agreement to pay for the media services by failing to pay outstanding invoices. The complaint alleged there were $204,435.28 in outstanding invoices, of which were attached to the complaint.

{¶23} Strategy Group argued in count three of the first amended complaint that Sue Lowden and Sue Lowden for U.S. Senate committed fraud and misrepresentation. Sue Lowden partially self-funded her campaign for U.S. Senate. Strategy Group's claim for fraud and misrepresentation was based on alleged statements made by Sue Lowden and members of her campaign that Sue Lowden would use her personal funds to ensure that all of Strategy Group's bills would be paid in full. The first amended complaint stated:

> * * * on or about June 3, 2010, Mr. Lowden participated in a conference call with Nick Everhart, the president of Strategy Group for Media's media planning and buying arm. At that time, a significant amount of "air time" for advertisements had been purchased. Strategy Group for Media could have cancelled those advertisements and used the funds to pay off outstanding bills for prior production work. During the conference call, however, Mr. Lowden once again represented to

Strategy Group for Media that Sue Lowden would use her own personal funds to ensure that all of Strategy Group for Media's outstanding production bills would be paid in full.

Based on these representations, and given Sue Lowden's ability to pay based on her enormous personal wealth, Strategy Group for Media provided Media Services to Sue Lowden and her campaign from January 2010 through June 2010. * * *

* * *

Sue Lowden and the Campaign Committee falsely represented to Strategy Group for Media that they had the ability to pay, and would pay, for the Media Services.

Sue Lowden and the Campaign Committee knew and intended at the time they made the false representations that those representations would be relied upon by the Strategy Group for Media.

Strategy Group for Media justifiably relied on the representations made by Sue Lowden and the Campaign Committee.

The false representations made by Sue Lowden and the Campaign Committee were material to Strategy Group for Media's decision to provide the Media Services to Sue Lowden and her campaign.

As a result of Sue Lowden's and the Campaign Committee's misrepresentations that induced Strategy Group for Media to take action to its detriment, Strategy Group for Media suffered monetary damages in

an amount in excess of $25,000.00, and in an amount to be proven at trial.

(First Amended Complaint, ¶27-28, ¶48-52.)

{¶24} Strategy Group's claims for both breach of contract and fraud were the basis for the motion for partial summary judgment filed by Lowden and Sue Lowden for U.S. Senate. In their motion for partial summary judgment, the defendants argued there was no genuine issue of material fact that Strategy Group could not prevail on its claims for both fraud and breach of contract, as the two separate claims were based on the same actions. To wit, "[i]n Ohio, a breach of contract does not create a tort claim. (Citation omitted). Generally, 'the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim.' (Citation omitted)." *Graphic Enterprises, Inc. v. TAS International, Inc.*, 5th Dist. No. 1999CA0085, 2000 WL 330059 (Mar. 13, 2000) citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist.1996). Lowden argues the basis of all Strategy Group's claims against her and the campaign committee is the failure to pay the outstanding invoices for the media services. Lowden and the campaign committee assert the committee disputed the outstanding invoices and therefore did not pay on demand.

{¶25} In opposing the motion for partial summary judgment, Strategy Group relies on the exception to this general rule as to tort and breach of contract that states, "[a] tort claim based upon the same actions as those upon which a claim for contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is,

a duty owed even if no contract existed." *Id.* A party can bring a fraud claim and breach of contract claim in the same action, as long as there is a duty owed by the breaching party that is separate from the breach of contract claim. Strategy Group argues there is a genuine issue of material fact whether Lowden and the campaign committee owe Strategy Group an independent duty outside of the contract to pay for the media services. We disagree.

{¶26} In order to demonstrate fraud, Strategy Group must show (a) a representation, or where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Developers Diversified Realty v. Coventry Real Estate Fund II, LLC*, 8th Dist. No. 97231, 2012-Ohio-1056, ¶ 20 citing *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

{¶27} Strategy Group argues Sue Lowden and the campaign committee owed Strategy Group the "duty to speak" of Lowden's intentions to stop self-funding her campaign. The Civ.R. 56 evidence shows that near the end of the campaign, Lowden revealed to her campaign committee that she could not continue to self-fund her campaign. Strategy Group points to a meeting on June 3, 2010 to demonstrate that Lowden had the opportunity and should have disclosed to Strategy Group her intention to stop self-funding her campaign: "on or about June 3, 2010, Mr. Lowden participated in a conference call with Nick Everhart, the president of Strategy Group

for Media's media planning and buying arm.  At that time, a significant amount of 'air time' for advertisements had been purchased.  Strategy Group for Media could have cancelled those advertisements and used the funds to pay off outstanding bills for prior production work.  During the conference call, however, Mr. Lowden once again represented to Strategy Group for Media that Sue Lowden would use her own personal funds to ensure that all of Strategy Group for Media's outstanding production bills would be paid in full."  (First Amended Complaint, ¶27.)

{¶28} The "duty to speak," as characterized by Strategy Group, is more often referred to as the "duty to disclose."  This Court has held that fraud is committed by a failure to disclose only when the person is under a duty to disclose, and the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or another similar relation of trust and confidence between them.  *Advanced Production Center, Inc. v. EMCO Maier Corp.,* 5th Dist. No.2003CAE03020, 2003–Ohio–6206, ¶ 14 citing *Fed. Mgt. Co. v. Coopers & Lybrand,* 137 Ohio App.3d 366, 383–384, 738 N.E.2d 842 (10th Dist.2000).  A "fiduciary relationship" is a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.  *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996).  In business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and therefore, generally neither party has a duty to disclose material information to the

other.  *Advanced Production Center, Inc., supra,* citing *Blon v. Bank One* (1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363.

{¶29} The question of whether Sue Lowden and the campaign committee were under a duty to disclose is dependent on whether Sue Lowden and the campaign committee had a fiduciary relationship or some other relationship of special trust and confidence with Strategy Group.  Alternatively, was the relationship between Sue Lowden, the campaign committee, and Strategy Group merely a business transaction? A fiduciary duty is generally defined as "'[a] duty of utmost good faith, trust, confidence, and candor owed by a fiduciary * * * to the beneficiary * * *; a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person.'" *In re Trust of Bernard,* 9th Dist. No. 24025, 2008-Ohio-4338, ¶ 20, quoting from Black's Law Dictionary (8th Ed.Rev.2004) 545.  The term "fiduciary" is defined as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking."  *Groob v. KeyBank,* 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 16.

{¶30} The second element necessary to determining whether a fraud claim and breach of contract claim can coexist in the same action assists in clarifying the question of whether an independent duty existed.  "In addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract." (Emphasis sic.)  *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist. 1996).

{¶31} In this case, Strategy Group alleges it suffered damages from Sue Lowden and the campaign committee's failure to disclose that Lowden would no longer self-fund her campaign. It states that if it had known, Strategy Group would not have proceeded in producing additional media material and would have applied those monies to the campaign's outstanding invoices. The result of Lowden's alleged failure to disclose was that Strategy Group produced the material and the campaign was invoiced for producing the material. Lowden and her campaign did not pay the invoices.

{¶32} We compare these damages to those alleged in Strategy Group's breach of contract claim. The first amended complaint alleges Lowden and the campaign refused to pay $204,435.28 due and owing to Strategy Group for producing media material. Strategy Group attached the supporting invoices to the complaint. Strategy Group did not provide separate invoices from those alleged were the result of fraud and those from the breach of contact.

{¶33} The trial court found that Strategy Group did not allege any separate damages resulting from the defendants' alleged fraud. The only damages alleged were the amounts alleged to be due and owing upon the invoices. Upon our de novo review, we reach the same conclusion. The damages alleged under the claim for fraud and the claim for breach of contract are based upon the same outstanding invoices. This does not meet the second element to allow a breach of contract action and a fraud action in the same claim because the damages attributable to the wrongful acts of Lowden and her campaign committee were the same, not in addition, to the damages incurred as a result of the breach of contract.

{¶34} This result supports our conclusion that the relationship between Strategy Group, Sue Lowden, and the campaign committee was a business transaction rather than a fiduciary relationship or a special relationship of confidence and trust. We find that reasonable minds could only conclude that Strategy Group could not establish a genuine issue of material fact that there was independent duty from that created by the contract and it suffered damages from the fraud in addition to the breach of contract.

Fraudulent Inducement

{¶35} Strategy Group argues its claim for fraud may coexist with the breach of contract claim because the fraud is also based on fraudulent inducement. A claim for fraudulent inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. *Home S. & L. Co. v. Eichenberger*, 10th Dist. 12AP-1, 2012-Ohio-5662, ¶ 21 citing *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 502 (1998). To prove fraud in the inducement, a plaintiff must establish that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied on that misrepresentation to his detriment. *Id.*

{¶36} Strategy Group states when the parties entered into the agreement to provide media services, Lowden had no intention of performing her promise to pay for their services. The basis of Strategy Group's claim is upon Lowden's significant personal wealth. When the parties entered into the agreement, Strategy Group was aware of her wealth and her choice to partially self-fund her campaign. "When Sue Lowden said she would self fund and use her own personal funds to pay for the costs

of the campaign, Strategy Group for Media believed and relied on these representations because of her enormous personal wealth." (Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, Dec. 27, 2011, p. 18.)

{¶37} There is no factual dispute that Lowden is wealthy. There is also no dispute Lowden partially self-funded her campaign with personal contributions and a $1,250,000 line of credit. The trial court found there was no Civ.R. 56 evidence to demonstrate, that at the time the agreement with Strategy Group was created, Lowden and the campaign did not intend to keep their promise to pay for campaign services. Upon our de novo review, we agree.

<u>Civil Conspiracy</u>

{¶38} When the trial court dismissed the underlying fraud claims, it also dismissed Strategy Group's claim for civil conspiracy. "The elements of a civil conspiracy claim are: '(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself.'" *Ogle v. Hocking Cty.*, 4th Dist. No. 11CA31, 2013-Ohio-597, ¶ 14 citing *Cook v. Kudlacz,* 974 N.E.2d 706, 2012–Ohio–2999, ¶ 90 (7th Dist.), quoting *State ex rel. Fatur v. Eastlake,* 11th Dist. No.2009–L–037, 2010–Ohio–1448, ¶ 45.

{¶39} "A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co., L.P.A.,* 183 Ohio App.3d 40, 2009–Ohio–2665, 915 N.E.2d 696, ¶ 40 (10th Dist.). As we have held that Lowden and the campaign committee are entitled to

judgment as a matter of law on Strategy Group's claim for fraud, we agree with the decision to also grant judgment in favor of Lowden and the campaign committee on the claim for civil conspiracy.

{¶40} We find no error for the trial court to grant partial summary judgment in favor of Sue Lowden and Sue Lowden for U.S. Senate.  Strategy Group's first Assignment of Error is overruled.

*II.*

{¶41} Strategy Group argues in its second Assignment of Error that the trial court erred in granting Sue Lowden's motion for directed verdict on Strategy Group's claims for breach of contract and unjust enrichment.  We disagree.

{¶42} The trial court granted Lowden's motion for directed verdict by finding, "[b]ased on the evidence in the record, the court is of the opinion that reasonable minds cannot differ on this issue, reasonable minds, can only – it does not – it does not apply against her individually.  There is no evidence whatsoever that she did anything to guarantee a payment.  The agreement was with her campaign committee. There was a lot of inferences raised because of her wealth and because she is or was a candidate, the court does not believe that that is enough to generate an unjust enrichment claim."  (Trial Transcript, p. 681-682.)  The trial court dismissed Sue Lowden from the cause of action.  The matter proceeded only against Sue Lowden for U.S. Senate on the breach of contract claim.

<u>Directed Verdict Standard of Review</u>

{¶43} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo.  *Groob v. Keybank,* 108

Ohio St.3d 348, 2006–Ohio–1189, 843 N.E.2d 1170, ¶ 14. Civ. R. 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, see Civ. R. 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor, see *Hargrove v. Tanner,* 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist.1990).

### Breach of Contract and Unjust Enrichment

{¶44} Strategy Group claimed it produced evidence at trial to demonstrate Sue Lowden promised to pay her campaign debts, including Strategy Group's bills. There is no dispute there was no written contract between Sue Lowden and Strategy Group or Sue Lowden for U.S. Senate and Strategy Group. Strategy Group proceeded under the theory there was an implied contract between Sue Lowden to pay for the media services, or in the alternative, that she was unjustly enriched by using the media services.

{¶45} In order to prove a claim for breach of contract by Lowden, Strategy Group had to show: 1) the existence of a contract; 2) performance by the plaintiff; 3) nonperformance by the defendant; and 4) damages as a result. *Textron Fin. Corp. v. Nationwide Mutual Insurance Co.,* 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th

Dist.1996), citing *Garofalo v. Chicago Title Insurance Co.,* 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). A plaintiff must prove the elements of a breach of contract by a preponderance of the evidence. *Cooper & Pachell v. Haslage,* 142 Ohio App.3d 704, 707, 756 N.E.2d 1248 (9th Dist.2001).

{¶46} Strategy Group asserts it established through testimony of conversations with Sue Lowden, Sue Lowden promised to pay the campaign debts. At trial, Rex Elsass, Scott Schweitzer, and Nicholas Everhart of Strategy Group testified that in their conversations with Sue Lowden and her husband, Paul Lowden, Sue Lowden orally agreed she would pay the invoices of Strategy Group.

{¶47} However, when reviewing the evidence in a light most favorable to Strategy Group, the trial court found that reasonable minds could only conclude that Sue Lowden did not enter into an oral agreement with Strategy Group to personally pay its bills. In doing so, the trial court found that Strategy Group relied too much upon the inferences made at trial as to Sue Lowden's personal wealth and the choice she made to partially self-fund her campaign. It was undisputed that Sue Lowden partially self-funded her campaign, but other evidence was presented to support the decision she did not personally enter into an oral agreement with Strategy Group to use her individual funds to pay for the media services. Lowden assigned her campaign manager, Uithoven, the task of managing the media services for her campaign. Uithoven negotiated the terms of the agreement to provide media services with Strategy Group. The written contracts provided by Strategy Group, while never signed, were to be signed on behalf of Sue Lowden for U.S. Senate. Uithoven

reviewed the invoices and the campaign treasurer was responsible for paying the invoices. Lowden did not personally review the invoices prior to the lawsuit.

{¶48} While Sue Lowden did contribute to her campaign, her financial support did not prove the existence of a contract. Upon our de novo review of the evidence presented, we find the trial court's conclusion was correct that reasonable minds could only conclude that Sue Lowden did not enter into an individual implied contract with Strategy Group for the provision of media services for her campaign.

{¶49} Strategy Group also claimed Sue Lowden was unjustly enriched by its services. The trial court granted a directed verdict in favor of Sue Lowden on Strategy Group's claim for unjust enrichment. Strategy Group argued the relationship between Sue Lowden, Sue Lowden for U.S. Senate, and Strategy Group was governed by an implied contract. The trial court, in granting the directed verdict in favor of Sue Lowden by determining reasonable minds could not find there was a contract between Sue Lowden and Strategy Group, the trial court concluded there was a viable claim for breach of contract between Strategy Group and Sue Lowden for U.S. Senate. The trial court stated:

> As to the unjust enrichment. The evidence in this case is pretty clear, both sides talked about the memorandum of understanding, the court is of the opinion reasonable minds cannot differ, there was in fact a contract implied by the documents, and the issue is whether or not the contract was breached. The plaintiff has the remedy of the contract claim therefore under this recent case of Westbrook versus Switech (sic), the court is of the opinion the unjust enrichment does not apply as to the

plaintiff's claim, that the unjust enrichment still could apply as to the individual Sue Lowden, individually.

(Trial Tr., p. 681.)

{¶50} Unjust enrichment operates in the absence of an express contract. *Delicom Sweet Goods of Ohio, Inc. v. Mt. Perry Foods, Inc.*, 5th Dist. No. 04 CA 4, 2004-Ohio-6645, ¶ 31. This Court in *Westbrook v. Swiatek*, 5th Dist. No. 09CAE09-0083, 2011-Ohio-781 held, "[t]he equitable doctrine of unjust enrichment or quantum meruit is generally applied when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered. *Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920, citing *Ullman v. May* (1947), 147 Ohio St. 468, 72 N.E.2d 63, paragraph three of the syllabus. However, where a contract describes the nature of services to be rendered and the compensation to be paid, the contract affords the appropriate relief and the equitable doctrine is inapplicable. *Ullmann,* 147 Ohio St. at 477–478, 72 N.E.2d 63." *Id*. at ¶ 98. In this case, the case proceeded to the jury on the issue of breach of contract between Strategy Group and Sue Lowden for U.S. Senate for which the jury found Sue Lowden for U.S. Senate liable in the amount of $193,554.71. The trial court did not err in determining an unjust enrichment claim could not stand where there was a claim predicated upon the existence of a contract between the parties.

{¶51} The second Assignment of Error of Strategy Group is overruled.

*III.*

{¶52} In Strategy Group's third Assignment of Error, Strategy Group argues the trial court erred in granting Sue Lowden and Sue Lowden for U.S. Senate a directed verdict on Strategy Group's request for attorney's fees. We disagree.

Directed Verdict Standard of Review

{¶53} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank,* 108 Ohio St.3d 348, 2006–Ohio–1189, 843 N.E.2d 1170, ¶ 14. Civ. R. 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, see Civ. R. 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor, see *Hargrove v. Tanner,* 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist.1990).

Attorney's Fees

{¶54} Strategy Group first argues it was entitled to pursue its request for attorney's fees because a provision as to attorney's fees was included in the written contract submitted to Sue Lowden for U.S. Senate. It is undisputed the written contract was never signed by Strategy Group or Sue Lowden for U.S. Senate. The

parties proceeded at trial under the theory the relationship was governed by an implied contract, as was stated in the jury instructions. (Trial Tr., p. 809.) Strategy Group states that while it went unsigned, the terms and provisions of the written contract still governed the relationship between the parties because the campaign committee failed to object to the terms of the written contract. This Court is unwilling to adopt Strategy Group's proposition that the terms of a written, but unsigned, contract govern the terms of an undisputed implied contract, which is to be determined by the words, deeds, acts, and silences of the parties. *Union Sav. Bank v. White Family Cos., Inc.*, 183 Ohio App.3d 174, 2009-Ohio-2075, 916 N.E.2d 816, ¶ 14 (2nd Dist.). A review of the record shows no evidence as to whether there was an agreement as to an attorney's fees provision in the implied contract.

{¶55} Strategy Group next argues it was entitled to attorney's fees based on bad faith breach of contract. Ohio follows the American rule which provides in a breach of contract case each party is responsible for their own attorney fees except as otherwise provided for by statute or contract or when the opposing party acted in bad faith, vexatiously, wantonly, obdurately, for malicious reasons, or otherwise engaged in malicious conduct. *Stambaugh v. T.C. Wood Realty, Inc.*, 5th Dist. No. 09 CA 00008, 2010-Ohio-3763, ¶ 36.

{¶56} Strategy Group states the campaign committee demonstrated its bad faith by failing to pay the amount due on the invoices when the campaign had the ability to pay the amounts due through Sue Lowden and her access to her personal wealth. Strategy Group's example of the bad faith was the conference on June 3,

2010 when the campaign was aware Sue Lowden would no longer self-fund the campaign but continued to order media production for the campaign.

{¶57} The campaign committee argues the failure to pay the invoices was not due to its bad faith but rather due to a dispute over the invoices.  The majority of the testimony at trial concerned the advertisements produced by Strategy Group for use during the primary campaign and invoiced to the campaign.  An example of such a disputed advertisement was entitled the "Gulliver Ad."  In the Gulliver Ad, a group of Nevadans is seen pulling a rope.  The rope is attached to a statue of Senator Harry Reid, which has a plaque on it stating, "Harry Reid, Senator for Life."  The people pull the statue of Senator Harry Reid down and it smashes to bits.  Sue Lowden and her campaign committee argued at trial that Strategy Group developed the advertisement on their own accord and when the campaign reviewed the advertisement, the campaign refused to use the advertisement.  Uithoven testified the early reviewers of the advertisement thought it should be destroyed.

{¶58} Upon the evidence presented at trial reviewed in a light most favorable to Strategy Group, we find the trial court did not err in finding that there was nothing presented at trial to take the request for attorney's fees "out of the American rule." (Trial Tr., p. 680.)

{¶59} Strategy Group's third Assignment of Error is overruled.

*IV.*

{¶60} In its final Assignment of Error, Strategy Group contends the trial court erred by excluding certain documentary evidence at trial.  The admission or exclusion of relevant evidence lies within the sound discretion of the trial court.  *State v. Sage,*

31 Ohio St.3d 173, 510 N.E.2d 343 (1987).  In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Statements by Robert Uithoven

{¶61} At trial, Strategy Group attempted to introduce two statements made by Robert Uithoven, campaign manager for the Sue Lowden for U.S. Senate campaign. The first was a May 27, 2010 news article in which Uithoven was quoted as saying the campaign had enough money to operate through to the June 8 primary and that Lowden made it clear that she will spend what it took from her own purse to finish the race.  (Uithoven, Ex. 16.)  The second was June 2, 2010 email from Uithoven to a reporter where he stated that if Lowden believed that she needed to add more personal money to "up the buys," she does.  (Uithoven, Ex. 18.)

{¶62} Strategy Group attempted to use Uithoven's statements to support its claim of fraud and misrepresentation against Lowden.  Strategy Group argued the statements corroborated Lowden's representations to Strategy Group that she would use her own personal funds to pay Strategy Group's bills.

{¶63} The trial court excluded the statements.  We find no abuse of discretion because there was no factual dispute that Lowden was a self-funded candidate.  The trial court found the statements were not pertinent because the statements made by Uithoven as to Lowden's self-funding capability does not demonstrate misrepresentations by Lowden to Strategy Group as to whether she intended to pay its invoices.

Filings with the Federal Election Commission

{¶64} The trial court excluded Strategy Group's Exhibits 22 through 24, which were copies of the campaign's Federal Election Commission filings. Exhibit 22 shows Lowden's personal contributions of her funds to the campaign and the debt owed to Strategy Group. Exhibit 23, filed with the FEC on October 19, 2011, shows payments to other vendors. Exhibit 24 is a Debt Settlement Plan that showed Lowden contributed personal funds to settle the campaign's debt.

{¶65} The trial court rejected the documents because they were filed in 2011, after the primary campaign. The trial court found Lowden and her campaign committee's actions after the primary campaign and the conclusion of its relationship with Strategy Group to be irrelevant and prejudicial to the issue of whether Lowden and the campaign engaged in fraud, fraudulent inducement, or breach of contract in its dealings with Strategy Group.

{¶66} We find no abuse of discretion for the trial court's decision to exclude the FEC filings from trial.

{¶67} Strategy Group's fourth Assignment of Error is overruled.

**CONCLUSION**

{¶68} The four Assignments of Error of Plaintiff-Appellant The Strategy Group for Media, Inc. are overruled.

{¶69} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

                                          _____
                                          HON. PATRICIA A. DELANEY

                                          _____
                                          HON. W. SCOTT GWIN

                                          _____
                                          HON. WILLIAM B. HOFFMAN

PAD:kgb

[Cite as *Strategy Group for Media, Inc. v. Lowden*, 2013-Ohio-1330.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE STRATEGY GROUP FOR MEDIA, INC. | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SUE LOWDEN AND SUE LOWDEN FOR U.S. SENATE | : | |
| | : | |
| | : | Case No. 12 CAA 03 0016 |
| Defendants-Appellees | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN