[Cite as *Alliance v. Marlington Local School Dist. Bd. of Edn.*, 2019-Ohio-1188.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| THE CITY OF ALLIANCE, OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| MARLINGTON LOCAL SCHOOL | : | Case No. 2018CA00076 |
| DISTRICT BOARD OF EDUCATION | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2017CV00733


JUDGMENT:      Reversed & Judgment Entered


DATE OF JUDGMENT:      March 29, 2019


APPEARANCES:

For Plaintiff-Appellee

JAMES F. MATHEWS
400 South Main Street
North Canton, OH 44720

JENNIFER ARNOLD
470 East Market Street
Alliance, OH 44601

For Defendant-Appellant

ROBERT M. MORROW
Two Miranova Place, Suite 220
Columbus, OH 43215

MARY JO SHANNON SLICK
2100 38th Street, NW
Canton, OH 44709

For County Intervenors

DEBORAH A. DAWSON
VIVIANNE WHALEN DUFFRIN
110 Central Plaza S., Suite 510
Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Marlington Local School District Board of Education, appeals the May 31, 2018 judgment entry of the Court of Common Pleas of Stark County, Ohio, granting summary judgment to Plaintiff-Appellee, The City of Alliance, and denying its cross-motion for summary judgment.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On November 20, 2001, Alliance and Marlington entered into an agreement titled "Enterprise Zone and Community Reinvestment Area Compensation Agreement." This agreement gave Marlington a share of the income tax revenues collected by Alliance from "new employees" working at real estate tax exempted locations under Community Reinvestment Area agreements (hereinafter "CRA").  In turn, Marlington waived its notice and consent rights available under R.C. 5709.62(D)(1) and (3) and 5709.83, thereby enabling Alliance to enter into tax abatements and grant exemptions up to 100 percent to projects under CRA agreements and/or Enterprise Zone Agreements.  The intention of the compensation agreement was a cooperative effort between Alliance and Marlington to foster and promote industrial projects and economic development.

{¶ 3}   On May 20, 2003, Alliance entered into a CRA agreement with Terry's Tire Town.  The agreement required Terry's to build a facility within Alliance's West Side Industrial Park and in return, Terry's would receive a 100 percent real estate tax exemption for fifteen years beginning in 2004.  The industrial park is located within the boundaries of the Marlington School District.  Alliance did not have to send notice or seek Marlington's consent because of the aforementioned compensation agreement.

{¶ 4}   In 2014, Terry's was sold to American Tire Distributors, Inc.  In April 2014, it was announced that the facility would close.  As a consequence, Alliance passed an

ordinance in December 2014 terminating the tax exemption titled "An Ordinance Terminating the Community Reinvestment Area Agreement with Terry's Tire Town and Declaring an Emergency."

{¶ 5} Thereafter, Alliance pursued claims against Terry's and American for breach of the CRA agreement. Alliance sought to recover monies under paragraph eleven of the agreement which permitted Alliance to require repayment of the exempted taxes in the event of a breach of the exemption agreement. This language is referred to as "clawback" language.

{¶ 6} The total amount of exempted taxes amounted to $1,802,605.37. The total amount of exempted taxes that would have been paid to Alliance equaled $76,691.25 and to Marlington, $1,336,735.19. The remaining amount, $389,178.93, would have been paid to various other taxing authorities (hereinafter "Stark County").

{¶ 7} Alliance entered into a tentative settlement agreement with Terry's/American, wherein Terry's agreed to pay $950,000 which was slightly over one-half of the exempted taxes. All the taxing authorities, Alliance, Marlington, and Stark County, authorized Alliance to enter into the settlement with Terry's for $950,000.

{¶ 8} A dispute arose between Alliance and Marlington as to how the amount should be distributed. Alliance proposed to pay Stark County its proportionate share amounting to $205,200.00, then subtract $151,240.25 from the remainder to compensate the city for direct damages under the CRA agreement ($121,240.25) and for attorney fees in pursuance of the settlement ($30,000). Alliance would then receive its proportionate share of $29,677.99 and Marlington would receive $563,881.76. The claimed amount for

damages of $121,240.25 stemmed from funds that Alliance had paid to Marlington during the term of Terry's tax exemption under the compensation agreement.

{¶ 9}  Marlington did not approve the proposed settlement distribution.  On April 4, 2017, Alliance filed a declaratory judgment action against Marlington, seeking a declaration that it had the right to control and settle direct contract damages against Terry's/American and had the authority to distribute the settlement funds as it desired. On May 26, 2017, Marlington filed an answer and counterclaim, seeking its full proportionate share of the $950,000.  Terry's and Stark County were permitted to intervene to protect their interests.

{¶ 10} On January 16, 2018, Alliance filed a motion for summary judgment. Marlington filed a cross-motion for summary judgment on February 26, 2018.  By judgment entry filed May 31, 2018, the trial court granted Alliance's motion and denied Marlington's cross-motion.

{¶ 11} Marlington filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 12} "THE TRIAL COURT COMMITTED ERROR IN FAILING TO ISSUE A DECLARATORY JUDGMENT IN FAVOR OF MARLINGTON WHICH WOULD OBLIGATE ALLIANCE TO UTILIZE SETTLEMENT PROCEEDS RECOVERED FROM TERRY'S TO REPAY THE TAXING AUTHORITIES WHOSE TAXES WERE EXEMPTED IN A PROPORTIONATE MANNER THAT IS CONSISTENT WITH R.C. §3735.671, R.C. §3735.68 AND THE CRA AGREEMENT."

II

{¶ 13} "THE TRIAL COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF ALLIANCE SINCE ALLIANCE IS REQUIRED TO UTILIZE THE SETTLEMENT PROCEEDS TO REPAY THE TAXING AUTHORITIES FOR THE TAXES THAT WERE EXEMPTED IN A FAIR AND CONSISTENT MANNER WHICH REQUIRES A PROPORTIONATE DISTRIBUTUION TO EACH TAXING AUTHORITY."

III

{¶ 14} "THE TRIAL COURT COMMITTED ERROR IN CONCLUDING THAT ALLIANCE HAD COMPLETE DISCRETION AND CONTROL TO REDUCE MARLINGTON'S SHARE OF THE SETTLEMENT PROCEEDS RECEIVED FROM TERRY'S IN ORDER TO PAY ALLIANCE'S ATTORNEY FEES WHERE NO STATUTE OR CONTRACT PERMITS SUCH ACTION."

IV

{¶ 15} "THE TRIAL COURT COMMITTED ERROR IN CONCLUDING ALLIANCE HAD COMPLETE DISCRETION AND CONTROL TO REDUCE MARLINGTON'S SHARE OF THE SETTLEMENT PROCEEDS BY THE AMOUNT OF INCOME TAX PAYMENTS MADE BY ALLIANCE TO MARLINGTON DURING THE COURSE OF THE EXEMPTION WHERE NEITHER MARLINGTON NOR ANY OTHER PARTY BREACHED THE COMPENSATION AGREEMENT."

I, II, III, IV

{¶ 16} In reviewing all of the assignments of error, the core of Marlington's claims is that the trial court erred in granting summary judgment to Alliance instead of granting Marlington's cross-motion for summary judgment. We agree.

{¶ 17} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 18} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court, a de novo standard of review. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 19} In its summary judgment motion at 6, Alliance argued the crux of this case is whether the CRA contract controls its right to pursue a legal recovery from Terry's and to control that recovery, or whether R.C. 3735.671 controls. In its cross-motion at 5, Marlington argued the crux of this case is the interpretation of the CRA agreement, the compensation agreement, and R.C. 3735.68.

{¶ 20} On November 20, 2001, Marlington and Alliance entered into the compensation agreement. Marlington would receive a share of the income tax revenues collected by Alliance from "new employees" working at CRA exempted locations. In turn, Marlington waived its notice and consent rights, thereby enabling Alliance to enter into tax abatements and grant exemptions up to 100 percent to projects under CRA agreements. The compensation agreement was silent as to what would happen to the income tax revenues received by Marlington in the event of a subsequent breach of a CRA agreement. The agreement was also silent as to the payment of attorney fees by any party.

{¶ 21} On May 20, 2003, Alliance entered into the CRA agreement with Terry's. The tax exemption granted to Terry's was to be in effect for fifteen years. However, Terry's facility was sold and eventually shutdown after ten years. As a consequences, Alliance terminated the CRA agreement in December 2014. Paragraph eleven of the CRA agreement provided the following:

> If Terry's Tire Town, Inc. materially fails to fulfill its obligations under this agreement, * * * the City may terminate or modify the exemptions from taxation granted under this agreement and *may require the repayment of*

*the amount of taxes that would have been payable had the property not*

*been exempted from taxation under this agreement.* (Emphasis added.)

{¶ 22} The CRA agreement was silent as to any other damages and the payment of attorney fees by any party.

{¶ 23} The language in the CRA agreement highlighted above follows the following provision in R.C. 3735.68 (revocation of exemption agreements):

If the agreement entered into under section 3735.671 of the Revised Code so provides, the legislative authority of a municipal corporation or county may require the owner of property whose exemption has been revoked to reimburse the taxing authorities within whose taxing jurisdiction the exempted property is located for the amount of real property taxes that would have been payable to those authorities had the property not been exempted from taxation.

{¶ 24} R.C. 3735.671, referenced in R.C. 3735.68, governs exemption agreements such as the CRA agreement herein. R.C. 3735.671 refers to exemption agreements entered into between "the legislative authority and the owner of the property." It is undisputed that Terry's was not the owner of the subject property. Alliance failed to enter into a CRA agreement with the property owner. Therefore, Alliance argued although it did not have a statutory remedy against Terry's/American, it could pursue a breach of contract claim against Terry's/American "for damages for breach of contract, recovery of

foregone taxes, attorney's fees and interest."   Plaintiff's January 16, 2018 Motion for Summary Judgment at 11.  Alliance argued because the CRA agreement did not conform to the statutes, it "placed the claims presented by Alliance, as to the recapture of foregone tax revenue in particular, at risk of being entirely barred and foreclosed."   *Id.* at 12. Nevertheless, Terry's/American agreed to settle with Alliance on its claims in the amount of $950,000.

{¶ 25} Marlington agreed to the settlement, but did not agree to Alliance's proposal of how to distribute the proceeds.  Out of the $950,000, Alliance would pay Stark County its proportionate share ($205,200), and then recoup the monies ("damages") it paid to Marlington under the compensation agreement and attorney fees for pursuing the claims against Terry's/American ($121,240.25 and $30,000, respectively).   The remaining amount was to be proportionately paid to Alliance and Marlington ($29,677.99 and $563,881.76, respectively).

{¶ 26} Alliance argued "[b]y virtue of its exclusive control over its [breach of contract] claims, and equal control of the decision to adjust and settle, the City also controls how the distribution of the gross settlement proceeds is assigned, what categories of losses are being compromised and paid and to what extent."   Plaintiff's January 16, 2018 Motion for Summary Judgment at 15.  Alliance argued the $121,240.25 paid to Marlington under the compensation agreement was "made in reliance upon the terms and conditions of the Terry's Contract, including the 15-year duration."   *Id.* Therefore, it could recoup said amount as reliance damages which reimburses the non-breaching party "for loss caused by reliance on the contract by being put in as good a position as he would have been had the contract not been made."  *Id.* at 13.

{¶ 27} Marlington argued pursuant to R.C. 3735.68, the $950,000 must be proportionally divided between Alliance, Marlington, and Stark County ($40,375, $704,425, and 205,105, respectively). Marlington argued Alliance's agreement with Terry's "was drafted as a CRA Agreement, managed as a CRA Agreement, and revoked as a CRA Agreement" and therefore the settlement proceeds should be "dictated by the CRA Agreement and the statutes governing CRA Agreements." Defendant's February 26, 2018 Cross-Motion for Summary Judgment at 15-16. "Alliance does not have the exclusive discretion, control, right and authority to alter the distribution of the settlement proceeds that have been received from Terry's." *Id.* at 22.

{¶ 28} In its May 31, 2018 judgment entry granting summary judgment to Alliance, the trial court determined the following:

It is undisputed in this case that the "owner" of the affected property in this matter was not a party to the Contract. Terry's was not the "owner" of the real property located in the CRA. Because the "owner" was not a party to the Contract, the Court finds there can be no recovery pursuant to R.C. §3735.68 and R.C. §3735.671. The evidence provided, including but not limited to the attorney work product in this case, demonstrates that there were many issues surrounding the negotiations and settlement between counsel for the parties in this matter. While the Court is not privy to all the discussions, the evidence provided demonstrates that Alliance was pursuing recovery as to more than just the foregone tax revenue. The Court finds that Alliance had the discretion to pursue, or not pursue the foregone

taxes. Further, if Alliance chose to pursue the forgone taxes, it was not precluded from asserting any other claims it had based upon breach of Contract. Alliance had the sole discretion to sue or not sue, and to assert whatever claims it wanted pursuant to breach of the Contract. Consequently, any settlement based upon the claims asserted was under the complete discretion and control of Alliance.

{¶ 29} While we agree that Alliance was not precluded from asserting claims against Terry's/American for breach of contract, we do not agree that Alliance has complete discretion and control over the settlement proceeds.

{¶ 30} Alliance argues because it failed to execute the CRA agreement with the proper owner, it was precluded from pursuing any remedy under the statutes and therefore chose to pursue breach of contract claims against Terry's/American. In order to prevail on a breach of contract claim, it was incumbent upon Alliance to establish: (1) the existence of a contract; (2) performance by Alliance; (3) breach by Terry's/American; and (4) damage as a result. *Blake Homes, Ltd. v. First Energy Corp.,* 173 Ohio App.3d 230, 2007-Ohio-4606, 877 N.E.2d 1041 (6th Dist). Alliance chose to settle with Terry's/American before the breach of contract claims could be litigated. It is the distribution of the settlement proceeds that is at issue.

{¶ 31} A close reading of the CRA agreement at paragraph eleven provides that in the event of a breach, Terry's may be required to repay "the amount of taxes that would have been payable had the property not been exempted from taxation" pursuant to the agreement. There are no additional provisions referring to damages or the payment of

attorney fees.  The CRA agreement did not include as a remedy the recovery of "any and all damages" or "other damages" as a result of a breach.  The only "damage" contemplated was the repayment of the exempted property taxes.  Under the terms of the contract, Alliance's settlement with Terry's/American for $950,000 was for the repayment of the exempted property taxes, regardless of how Alliance chooses to characterize it.

{¶ 32} Alliance received the benefit of its bargain under the compensation agreement with Marlington when it was able to give a 100 percent tax exemption to Terry's without notice to or consent from Marlington as required under R.C. 5709.62 and 5709.83. Alliance chose to share the income tax revenues from new employees with Marlington, but was not required to do so under the CRA.  Alliance could have included a provision in the compensation agreement requiring Marlington to pay back the received income tax revenues in the event of a subsequent breach under the corresponding CRA agreement, but chose not to do so.

{¶ 33} If Alliance would have properly entered into the CRA agreement with the owner of the property and the owner did not fulfill the terms of the agreement, Alliance's remedy would fall under R.C. 3735.68 as cited above in ¶ 23.  The reimbursed exempted taxes would have been proportionately divided between the parties, and Alliance would not have been able to subtract any monies it paid to Marlington under the compensation agreement.  Alliance never contemplated recovering the monies because of a failed CRA agreement because it did not include a provision for such in the compensation agreement. Alliance is now attempting to take advantage of its failure to enter into the CRA agreement with the proper party and recover the monies paid to Marlington under the theory of "reliance" damages.  Albeit a creative argument, we find this attempt to be unsupported

by the agreements and the law. Alliance did not rely on the fulfillment of the CRA agreement to pay Marlington half of the income tax collected from the new employees because it did not enter into an agreement for reimbursement from Marlington in the event of a breach of the CRA agreement.

{¶ 34} Alliance's "damages" under the breach of the CRA agreement with Terry's is the amount of monies it would have received had Terry's complied with the agreement e.g., income tax revenue from the employees for the remaining five years. We find Alliance did not establish damages on its breach of contract claim for purposes of the declaratory judgment action sub judice.

{¶ 35} As to the recovery of attorney fees, "Ohio follows the American rule which provides in a breach of contract case each party is responsible for their own attorney fees except as otherwise provided for by statute or contract or when the opposing party acted in bad faith, vexatiously, wantonly, obdurately, for malicious reasons, or otherwise engaged in malicious conduct." *Strategy Group for Media, Inc. v. Lowden,* 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, ¶ 55, citing *Stambaugh v. T .C. Wood Realty, Inc.,* 5th Dist. Morrow No. 09 CA 00008, 2010-Ohio-3763, ¶ 36.

{¶ 36} In its summary judgment motion at 13, Alliance argued "[a]ttorney's fees may be recoverable in a breach of contract action under the bad faith exception." Alliance did not elaborate as to what actions Terry's/American did to constitute bad faith other than breaching the contract, stating "[c]ourts have allowed recovery of attorney's fees as compensatory damages when they are the legal consequences of the original wrongful act."

{¶ 37} In support of its argument, Alliance cited the case of *Shanker v. Columbus Warehouse Ltd. Partnership,* 10th Dist. Franklin No. 99AP-772, 2000 WL 726786. The *Shanker* case involved a breach of a settlement agreement by both parties. The trial court awarded attorney fees to the defendant as compensatory damages for the period between the breach of the settlement agreement to the trial court's decision. On appeal, the defendant claimed the trial court erred in failing to grant additional attorney fees from the time the settlement agreement was placed on the record to the time of breach. The Tenth District disagreed, finding at *4, "[a]ny attorney fees incurred before the breach are fees defendant would have spent regardless of plaintiffs' breach; they were not caused by plaintiffs' breach, but were a necessary part of preparing the documents to memorialize the settlement agreement ending the litigation between the parties. Therefore, they are not recoverable." As in this case, the attorney fees incurred by Alliance were a necessary part of presenting its claims to Terry's/American and "preparing the documents to memorialize the settlement agreement ending the litigation between the parties. Therefore, they are not recoverable."

{¶ 38} In the absence of any contract provisions on attorney fees and any showing of bad faith, we find Alliance is not entitled to the recovery of attorney fees.

{¶ 39} Upon review, we find the trial court erred in granting summary judgment to Alliance and denying Marlington's cross-motion for summary judgment. Under our de novo review, we hereby grant summary judgment to Marlington, and order Alliance to disburse the settlement proceeds ($950,000) as follows: Marlington receives 74.16 percent ($704,520), Stark County receives 21.59 percent ($205,105), and Alliance

receives 4.25 percent ($40,375).[1]  However, because Alliance and Stark County already agreed that Stark County should receive $205,200, Marlington is willing to forego its full share and allow the extra $95 to go to Stark County.  Marlington shall receive $704,425 and Stark County shall receive $205,200.

{¶ 40} Assignments of Error I, II, II, and IV are granted.

{¶ 41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby reversed, and judgment is entered in accordance with ¶ 39.

By Wise, Earle J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/db 27

---

[1]The percentages are derived from the affidavit of Stark County Auditor Alan C. Harold, Exhibit A-2, attached to Defendant's Cross-Motion for Summary Judgment.